Good morning, Your Honors. Michael Bindis for Appellants Jim and Cliff Courtney. I'd like to reserve three minutes for rebuttal. Add your own time. The Supreme Court told us in the Slaughterhouse cases that the Privileges or Immunities Clause of the 14th Amendment protects the right to use the navigable waters of the United States. There are only a few such rights of national citizenship protected by the clause, but that is one of them. Now, Jim and Cliff Courtney may or may not be able to prevail on the merits of their claims for abridgement of that right, but they have surely stated claims under Slaughterhouse for its abridgement. Their first claim alleges that as applied to boat service on Lake Chelan that is open to the general public, Washington's public convenience and necessity requirement abridges the right to use the navigable waters. Well, let's assume that you're right and there is a right to use the navigable waters of the United States that's recognized under the Privilege and Immunities Clause. The licensing requirement here doesn't preclude all uses of these waters. They can still be used for private purposes, commercial, freight purposes, for example. So is this case more fairly characterized as a challenge on the right to operate a public ferry, which is the subject of your Claim 1? It is not, Your Honor. The Slaughterhouse held that the clause protects the right to use the navigable waters, period. One of the rights within that broader right is the right to use it for the purpose of providing ferry service, and in this regard, this case is no different than the most recent Privileges or Immunities Clause case that we have from the U.S. Supreme Court, Sines v. Roe, where the Court held that the right to travel or a component of the right to travel is protected by the Privileges or Immunities Clause, and then more specifically that the right to travel in connection with the receipt of welfare benefits is protected by the clause. So the fact that this is one kind of more narrow right within the broader right of the right to use the navigable waters is of no moment. The fact is the clause protects the broader right, and this is one component of that right, Your Honor. If the State of Washington, if the licensing authority had agreed with your client and granted them the opportunity to provide ferry service, would you still have this claim? We would, Your Honor, because of the fact, well, let me rephrase that, Your Honor. If the Courtney's had gone through the process and... It's a hypothetical question. Let's assume I know that your client got danced around a little bit, quite frankly, by the licensing authority. But let's suppose that when they went in the first time, they said, you know what, you're right, you can do this. It's not a problem. It's not in violation of State laws, compliant with State law. If you want to transport clients to your hunting and fishing lodges, go right ahead. Would you have a claim? Probably not, Your Honor, for this reason. In that case, we would be seeking retroactive relief. We had gone through the process, received the certificate, and are now complaining about the process we had already gone through. And I would think there would be an Eleventh Amendment immunity issue there if we were seeking retroactive relief against the State of Washington. So I don't think, with respect to that application, we could look back and state a claim. However, if the court needs one to provide another service in the future on the lake and challenge the certificate requirement prospectively, I certainly do think they would have a claim, yes. And why shouldn't they be required to go all the way through the process and get a denial if that's what's going to happen? Because, Your Honor, there is – For what purposes? As the Supreme Court held in City of Chicago v. Atchison, Topeka, and Santa Fe Railroad Company, Your Honor, where a public convenience necessity requirement is unconstitutional as applied to a plaintiff. The plaintiff is not required to first seek and be denied a certificate before challenging that requirement in court. Another case we cite to that effect, Your Honor, in our briefs is Public Utilities Commission of California v. United States. Now, Your Honor, as I mentioned at the outset, the court needs to have clearly stated a claim for abridgment of the right to use the navigable waters of the United States. They have alleged every element of a viable privileges or immunities clause claim. First, the court needs to have alleged the slaughterhouse case is held and the state has conceded that the clause protects the right to use the navigable waters. Number two, Your Honor, the court needs to have alleged the federal government has declared and the state has conceded that Lake Chelan is such a body of water. Number three, Your Honors, the court needs to have alleged that they wish to use Lake Chelan to operate a ferry. Number four, they have alleged that the certificate requirement abridges that right. And number five, they have alleged that the state has no compelling, substantial, or even legitimate interest for applying the certificate requirement on Lake Chelan. So what do you make in the slaughterhouse cases when ferries are particularly referenced and it seems to approve the authorization of monopolies? Your Honor, the slaughterhouse cases, neither the majority nor dissent approve of exclusive ferry franchises. The term ferry or ferries is mentioned once in the majority opinion. And it's mentioned in a quote from Gibbons v. Ogden where the court is referring to the police power. Right. Your Honors, we don't dispute that the state of Washington has police power to regulate ferries for public health and safety. That's why we're not challenging inspection requirements, insurance requirements, requirements that a crew be trained and capable This is not an exercise of the police power. It's the power to exclude. And as the U.S. Supreme Court held in the Vidalia case, in the city of Sault Ste. Marie case, an exclusive ferry franchise or a licensing requirement that requires government consent to operate a ferry is not an exercise of the police power, but rather the power to exclude. Now, Your Honor, I don't know if you'd like me to address the dissenting opinions in the slaughterhouse as well. But there, too, there was no approval of a ferry franchise. To the contrary, Justice Bradley, in his dissent, noted that monopolies, including specifically ferry monopolies, were statutorily outlawed in England at the time of the framing. And he called that statutory prescription a constitutional landmark of English liberty, part of the inheritance which our fathers brought with them. Of course, that's in the dissent, which would seem to be saying that the majority was endorsing the use of monopolies. Your Honor, there was simply no issue of a- But sometimes a dissent can define what the majority is really doing. Certainly, Your Honor, but the important point on this is that there simply was no ferry franchise at issue in the slaughterhouse opinion. So do you think that any monopoly, the grant of a monopoly on any navigable water in the United States, violates the privileges under the immunities clause? No, Your Honor, not necessarily. Tell me why. Not necessarily, and here is why, Your Honor. Could someone state a claim that an exclusive monopoly on the right to use the navigable waters is an abridgement of their right under the privileges of immunities clause? Sure. But as in any constitutional case involving any constitutional right, a district court would then be charged with weighing the state's interest in maintaining that monopoly against the citizen's right to use the navigable waters and with assessing the fit between the monopoly, in this case the public convenience and necessity requirement, and the state's interest. That balance, that constitutional analysis, is going to change from case to case. The important point about this case, however, is that we're up here on a 12 v. 6 motion. We've never even gotten to that constitutional analysis yet, Your Honors. Regarding the second claim that the court needs to make, Your Honor, that is... Let me go back and clarify something. You had cited and you talked about a couple of cases involving the power to license being akin to power to exclude. Now, if I recall correctly, those cases involved challenges under the commerce clause, were they not? They were, Your Honor. That is, so the ferry regulations basically impacted the... or placed a new burden on interstate commerce. Do you have a case like that involving the privileges and immunities clause specifically as to ferry regulation? Under the privileges or immunities clause, Your Honor, no. This court is in the enviable or perhaps unenviable position of having to address that question in the first instance. The closest case I would think to touch on that point was the Knight case out of the Court of Appeals of New York, in which case that court held that the navigable waters, even when wholly within a state, cannot be made the object of an exclusive franchise or monopoly. But that case, to answer your question, was not resolved under the privileges or immunities clauses. So this is an issue of first impression in that regard. However, those commerce clause cases, specifically Vidalia and City of Sault Ste. Marie, are specifically addressing the police power in that situation. And so to the extent they're making a distinction between the right to regulate, which we do not contest, and the right to exclude, which we do, it was speaking more broadly, not just about the commerce clause power, Your Honor. Now, with respect to the Courtney's second claim, this is that as applied to boat service on lakeshore land for patrons of specific businesses or a group of businesses, such as the Courtney family businesses or other Stehegan-based businesses, the convenience and necessity requirement again abridges their right to use the navigable waters of the United States. District Court dismissed this claim on standing, rightness, and Pullman abstention grounds because of a supposed what the Court called lingering uncertainty about whether the Courtney's are required to obtain a certificate for that type of service. Your Honors, there is no uncertainty. We know this from the 2008 letter from Director Danner to the Courtney's, the 2009 letter from Executive Director Danner to the Courtney's, the 2010 formal report from the full commission to the legislature, and decisions of the Washington Supreme Court that the commission relied on in that 2010 report, all of which make clear that a certificate is required for this type of service. I'll start with Director Danner's correspondence, Your Honor, and I'm quoting from page 36 of the state's brief here. Cliff Courtney received only consistent opinions from Executive Director Danner that, again I'm quoting, the Courtney's need a certificate to provide boat transportation for patrons of specific businesses. That's the state's brief, Your Honor. Number two, the full commission. After Cliff Courtney received this correspondence from Director Danner, he approached former Governor Gregoire and several state legislators and inquired about the possibility of relaxing the certificate requirement on Lake Chelan. The legislature, in turn, directed the commission to study the issue, which it did, came back with a formal report in 2010 to the legislature, which reiterated the certificate requirement and recommended, and again I'm quoting, that no changes to the state laws dealing with commercial ferry regulation as it pertains to Lake Chelan be made. Well, I think the lower court thought that there was still some uncertainty because Danner, in his notification to the Courtney's, indicated that, look, you can go ahead and pursue a formal ruling from the commission. And if I read the record correctly, that wasn't done. And then the report that was commissioned left the door open, potentially for some competition without a certificate of public necessity, provided that the existing service is not significantly threatened. And, you know, that's pretty ambiguous. And so there's been no formal ruling as far as I can tell. What do you make of those facts in the record? Your Honor, there's absolutely no uncertainty as to whether a certificate is required. And I'll quote the language from the report that Your Honor is referring to. The commission said that in the future, and I'm quoting here, could potentially allow some degree of competition. Could potentially allow, Your Honor, means not currently allowed. The fact is if a certificate were not required currently, the state would have said as much to the district court. It would have said as much to this court, but it has not. Moreover, as to the, and I see my time is getting low here, Your Honor, but very briefly, as to the process that the Courtney's could supposedly go through to change the current policy, number one, it's probably not even available because as Director Danner said and as RCW 3405-240 makes clear, the incumbent ferry provider, Lakeshore Land Boat Company, has to consent to that process before it can be utilized. Even then, the Courtneys have to offer expert testimony proving that their service would not impact the incumbent provider. And even then, the commission has already said that it is unlikely in that 2010 report that they would change the current policy. So, Your Honor, there is no uncertainty. But moreover, the process supposedly available to them is probably not available and would ultimately be just as costly, burdensome, and futile, if not more, than the certificate process itself. And I'd like to reserve the remainder of my time for rebuttal. Thank you. Thank you. We'll hear from the State. Good morning. I'm Fronda Woods, Assistant Attorney General for the Defendant State Officials. The counsel for Amicus Arrow Launch Services is also present in the courtroom today. The District Court held that the Courtneys do not have a 14th Amendment right to operate a commercial ferry open to the public on Lake Chelan. That decision was correct. The District Court properly dismissed Claim 1 for failure to state a claim upon which relief can be granted. Whether the Courtneys need a state ferry certificate to operate a private boat service on Lake Chelan for patrons of specific businesses is an unsettled question of state law. Your clients have taken different positions on that, haven't they? It is correct that the Executive Director... The answer to my question is yes, isn't it? It is correct as to Mr. Danner. It is not correct as to the other three defendants. The Utilities and Transportation Commission speaks officially through the commission acting as a body, the three commissioner defendants. Executive Director Danner was not speaking on behalf of the full commission. In the report that counsel has referred to, the report specifically describes Mr. Danner's opinion as having been his opinion, the opinion of the commission staff. It was not the opinion of the full commission. There has never been a determination by the full commission as to whether the Courtneys need a state ferry certificate. Why does somebody in the Courtney's position have to go through all of the difficulties they've apparently encountered to get an answer to whether they can do this at all? In what form can they do it? How do they comply with it other than going through the permitting process? The Courtneys do not have to go through the permitting process in order to get a determination on whether they need a state certificate to operate a shuttle service for patrons of their businesses. So what do they need to do? The step that my clients would prefer them to take would be to file a declaratory order action before the commission. That does not require testimony. It is based on facts that are laid out in the petition, and then there is legal argument based on those facts. Does the current permit holder have to agree to that process? The current permit holder does have to agree to that process. Why would they? They might not. If the commission were unable to issue a declaratory order because the current permit holder did not consent, that would not be the end of the story. At that point, the Courtneys would have exhausted their administrative remedies. They then could file a declaratory judgment action in state court. So you're telling me it's impossible in a situation like this for a citizen to come in and say, here's broadly what I want to do. I want to get people who want to come to my hunting and fishing lodge across the lake, and right now the only way they can do it is through the permitted commercial operation. And tell me how I need to describe this or give me some advice on how I need to do this, because I want to be compliant with the law and I want to run afoul of you folks. I recognize the cumbersome nature of the process before the state administrative agencies. They do not have the ability to join necessary parties. The state courts do, however. Well, why couldn't the federal district court do the same thing? Because the state courts are the experts on what state law requires. All right. Let me ask you two questions. One is we have a doctrine in federal law called the Doctrine of Primary Jurisdiction where courts are empowered to transfer cases to federal administrative agencies for determination. Then the court keeps control of the case, but they allow adjudication. There's some question about whether we can or can't do that with state agencies. There's conflicting authority, but I think it's an open question in our circuit. Why shouldn't we just send this over to the commission? Stay the action here and have the commission decide this question so these folks don't have to keep jumping through innumerable series of hoops before they get an answer to the question. Assuming that's procedurally possible, I don't think the commission would object to that. Second question is this appears to be a question of statutory interpretation. Am I correct? That is correct. As to claim to. As to claim to. As to claim to. Thank you. Why shouldn't we certify that question to the Washington Supreme Court? That would be another option. In fact, that was one that the district court brought up during the oral argument on the motion to dismiss. So what's your position on that? You said it's an option, but what's the state's position? I haven't consulted with my clients about that particular option, but I don't view it as being objectionable. I mean, I share, I think, what my colleague's concerns is that this all ends up to be a dance through different procedural hoops that doesn't end up anywhere. I mean, if the opposing party has to consent before they can get a deck action answer from an agency, that effectively gives a private party a veto over state agency action, which I find odd to say the least. And that is the way the state agency process works in the state of Washington because the state agencies do not have the ability to join necessary parties? No, but certainly the necessary parties can intervene as a matter of either right or privilege. That's correct. This is a situation where an opposing party can completely block an administrative decision on whether or not you even need a permit or not. I find that just completely odd. It's not the only instance of that happening in the state of Washington under the agency procedures because they do not have the ability to join parties that would be affected by decision. As I said, however, the state courts do. So an option for the court needs could be to file a declaratory judgment action in the state courts. Washington has adopted the Uniform Declaratory Judgment Act, and the state court, state superior court, does have the ability to join necessary parties and indeed must. My understanding from looking at the docket is there was some attempt to mediate this case early on. Is that right? I don't believe that's correct, Your Honor. Let's assume it's not correct. Is the state of Washington amenable to sitting down with our circuit mediator and trying to resolve the problem in a mediated fashion? No, the state's not interested in that because the state wants to be able to decide what its own law is, what its own law means. Well, mediation doesn't require you to do anything. It just requires you to talk about a solution to a problem. You don't foresee a way that the state's going to agree to any solution. Is that right? That's not correct, Your Honor. The Washington Utilities and Transportation Commission would like to have the ability to decide for itself what the laws that it administers mean. Do they think they need a court to tell them to do that? That may be without the consent of the incumbent provider. Now, the court has not asked questions about... Well, one thing our mediators can do is bring in third parties who are non-parties too. So theoretically, the third-party carrier can be invited to those discussions. We could find out pretty quickly whether they're going to consent or not. I was not aware that the Ninth Circuit mediator had the ability to bring in non-parties. No. I'd like to address one of the points that counsel made about the power to license being the power to exclude. Counsel cited Commerce Clause cases. The U.S. Supreme Court has also noted that the power to license public ferries, including the power to grant franchise monopolies, is part of the state's police powers. The Slaughterhouse decision itself recognized that, 83 U.S. at 63. The Gloucester ferry case that both parties have cited in their briefs also contains that statement. Does the commission take the position that no one, other than the currently permitted commercial operator, can operate a ferry on this lake? Not without getting a certificate from the commission showing and demonstrating that the public convenience and necessity require such operation. And part of that determination would involve no impact on the existing permit holder. Is that right? I don't think no impact would be the right way to describe it. Adverse impact. Adverse impact that would adversely affect the services that the income provider is providing and the public that uses them. So it sounds like the position of the commission is no one, under the existing strictures and requirements, no one other than the current commercial license holder can operate a ferry on Lake Chelan. Not without getting a certificate from the commission. Which can't be done without the existing permit holder agreeing to the process. That's not quite correct, Your Honor. Tell me why it's not quite correct. I'm understanding Your Honor's question as going toward Claim 1 of the complaint, which has to do with operation of a public ferry. These court needs would have to apply for a certificate. The existing provider would have the opportunity to protest the application, which is essentially an intervention. So that would not require the consent of the existing provider. But the existing provider would have an opportunity to participate. That's as to Claim 1. And the discussion that we've been having earlier about operation of a service for, a shuttle boat service for patrons of specific businesses goes to Claim 2. That's a different type of service from a ferry that's open to the general public. Right. I mean, if I'm stuck at that end of the lake and I have an emergency and I ask the courtneys, can I pay you to take me across the lake, they would say, no, you've got to go to the Public Service Commission and petition and get consent before I can transport you. That's your position, right? I don't know the answer to that question, Your Honor. I think probably that somebody could provide transportation in their own boat for that type of situation, and it would not be considered. How do we know? Under Claim 2. That's all of Claim 2. Can we operate an on-demand boat service? Well, that's not Claim 2, Your Honor. The courtneys did seek an advisory opinion on whether they could provide an on-demand boat service. They were told no, but that's not the subject of either of the claims in this case. Fair enough. But it is for a private ferry service that's tied into specific businesses. So if I were on vacation and I'm stuck on one side, could I then call the courtneys? And I think that was just Thomas' question. Could I call the courtneys and say, hey, I'm staying at the hotel, come pick me up, and I'm happy to pay for that because I missed the ferry going back? That you could not do. Right. The answer is you'd have to petition the commission and have to consent and then failing that you'd have to go to district court before you got your ride back. Or you'd have to go to superior court, Your Honor. Yes, superior court. And all those hoops would have to be jumped through before the courtneys can even get a determination as to whether a certificate is required. It seems right for mediation to me to get all the stakeholders in one room and just talk about the options. That seems to make a lot of sense, doesn't it? I appreciate your comments, Your Honor. I'd like to conclude by urging that the district court order dismissing the complaint was correct and this court should affirm. Thank you. Put on two minutes. Thank you, Your Honor. I appreciate that. Your Honor, I'd like to make three quick points in rebuttal. The first is there is no uncertainty regarding the second claim, Your Honor. I think that's evidenced by the fact that the state never raised standing rightness or Pullman abstentions in its briefs below. Number two, Your Honor, the declaratory order process and whether there would be expert testimony required, the state suggested that there wouldn't. I'm reading or get that from page 12 of the commission's 2010 report, Your Honor, where the commission said that a finding would have to be supported by, quote, expert testimony in order for additional service to be offered on the lake and that the courtneys would have to prove that their service would not significantly threaten the regulated carrier's ridership, revenue, and ability to provide reliable and affordable service. So testimony would be required, or at least the courtneys would have to prove those things that I just mentioned, and how you prove that without testimony, I don't know. And the third point I'd like to make, Your Honor, is the state invoked a Gloucester Ferry case for the proposition that a state may monopolize ferry service. In the Gloucester Ferry case, Your Honor, the state of Pennsylvania did not monopolize service on the Delaware River. To the contrary, and I'm reading an abbreviated sentence from the case here, the court said anyone is free to establish such ferries as he may choose. So, Your Honor, Gloucester does not stand for that proposition. Any comments on certification, primary jurisdiction, or mediation? Your Honor, with respect to mediation, I can't answer that question without consulting with the courtneys. However, the courtneys are not in this solely to get a certificate to get up and running. They're in this because they believe the public convenience and necessity requirement is unconstitutional as applied to Lake Chelan. Your Honor, that's why they went to the legislature. So this is a bigger issue. But I could not address that specific question without consulting with them, Your Honor. Certification? Your Honor. This would be on issue two. I'm sorry. On claim two. On claim two, Your Honor. Your Honor, if the court is convinced that there is uncertainty. Your argument is there's no uncertainty. Yes, Your Honor. And if I may just say I believe I've got. No, you're over time. I'm over time. Our questions have taken you. Okay. Go ahead. If I can make one more point, Your Honor, and that is with respect to the degree of uncertainty specifically under Pullman abstention. This court in Pearl Investment Company v. City and County of San Francisco said that abstention is only appropriate if a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law. Given the Kitsap County Transportation Company case and McDonald v. Irby from the Washington Supreme Court, both of which the commission relied on in its 2010 report, I think we know exactly how the Washington Supreme Court would rule in this case, Your Honor. Thank you. Thank you. The case is here to be submitted for decision. It's an interesting issue in the case, and we will stand in recess for the morning. All rise.
judges: Hawkins, Thomas, Nguyen